WILLIAM H. THOMAS (ISB 3154)
DANIEL E. WILLIAMS (ISB 3920)
KIM J. DOCKSTADER (ISB 4207)
THOMAS, WILLIAMS & PARK, LLP
121 N. 9th St., Ste. 300
P.O. Box 1776
Boise, ID 83701-1776
Telephone: (208) 345-7800
Fax: (208) 345-7894
wmthomas@thomaswilliamslaw.com
danw@thomaswilliamslaw.com
kdoc@thomaswilliamslaw.com

**Attorneys for Plaintiff**

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD SHOEMAKER, individually, and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br><br>UNITED PARCEL SERVICE, INC., an Ohio corporation,<br><br>　　　　　　　　　　Defendant. | Case No. CV10-185-S-EJL<br><br>**MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE PORTIONS OF THE AFFIDAVIT OF GERALD SHOEMAKER DATED JULY 26, 2010** |

Plaintiff Gerald Shoemaker ("Shoemaker") hereby submits this memorandum in opposition to the Motion to Strike Portions of the Affidavit of Gerald Shoemaker filed by Defendant United Parcel Service, Inc. ("UPS") (Dkt. 27).

## I. INTRODUCTION

Shoemaker has presented this Court with his sworn affidavit consisting of specific matters based on his personal knowledge. Affidavit of Gerald Shoemaker in Support of Response to the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Shoemaker Affidavit") (Dkt. 24), at p. 1 ("… being first duly sworn on oath …"), ¶ 2 ("The matters set forth below are within [Shoemaker's] *personal knowledge* …") (emphasis added), and p. 15 (setting forth Shoemaker's signature subscribed and sworn before a notary public). The Shoemaker Affidavit contains the only sworn and direct testimony provided by him in this litigation because all discovery (including the taking of depositions) has been postponed by the parties pending submission and resolution of the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by UPS (Dkt. 15).

A review of the testimony provided in the Shoemaker Affidavit plainly demonstrates that Shoemaker has met his burden as the non-movant to set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This evidence is admissible and, when viewed as it must be in the light most favorable to Shoemaker as the non-moving party,[1] firmly establishes that there is a genuine issue for trial.

In an apparent effort to obfuscate the facts or use sharp tactics to force a one-sided and premature resolution of this issue at the early stages of this litigation, UPS has filed in shotgun fashion numerous trial-like objections to the Shoemaker Affidavit based variously on relevance, the sham affidavit rule, lack of personal knowledge and/or foundation, improper opinion or

---

[1] *Anderson,* 477 U.S. at 255.

MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE PORTIONS OF THE
AFFIDAVIT OF GERALD SHOEMAKER DATED JULY 26, 2010, P. 2

conclusions of law, and hearsay. *See* Motion to Strike Portions of the Affidavit of Gerald Shoemaker Dated July 26, 2010 (Dkt. 27) (the "Motion to Strike"), at p. 1. As will be discussed further below, these objections are improper and ill-founded, and good cause therefore exists for a complete denial of the Motion to Strike.

The objections by UPS also are inappropriate at this stage of the litigation because, even on summary judgment, the evidence presented need not be in a form that is admissible at trial. *Arias v. McHugh*, 2010 U.S. Dist. LEXIS 60814, at *18 (E.D. Cal. June 17, 2010); see also *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## II. PLAINTIFF GERALD SHOEMAKER'S AFFIDAVIT CONTAINS ADMISSIBLE EVIDENCE AND SETS FORTH SPECIFIC FACTS DEMONSTRATING A GENUINE ISSUE FOR TRIAL.

### A. Paragraphs 5, 7, 8, 9, 17, 27(f), and 30-35 are Relevant to Determining Whether the Motor Carrier Exemption Applies to Shoemaker's Actual Employment as an On-Road Supervisor, and <u>Not</u> as a Driver, Driver's Helper, Loader/Unloader or Mechanic.

Shoemaker has presented in the subject paragraphs evidence that he has not been employed by UPS as a driver, driver's helper, loader/unloader or mechanic during the relevant time period,[2] and that in his personal experience as an on-road supervisor he did not typically drive UPS package cars (over 10,000 pounds in weight) to deliver or pick-up packages or otherwise perform the job of drivers hired by UPS for that purpose.[3] Although UPS purports to object to this evidence on the grounds of relevance, what UPS is really arguing is that the Court

---

[2]Shoemaker Affidavit, ¶¶ 5, 7-9. *See also* Shoemaker Affidavit, ¶¶ 6, and 11-12.

[3]Shoemaker Affidavit, ¶¶ 17, 27(f) and 30-35. *See also* Shoemaker Affidavit, ¶¶ 14-15, 16, 18, 19-21, 27(a), 27(c)-27(m), and 28.

should ignore this evidence because it does not comport with the view of this case held by UPS. Notwithstanding this self-serving objection by UPS, the evidence is clearly relevant on its face.

The Motor Carrier Exemption is applicable, under decisions of the U.S. Supreme Court, only to an employee who is classified as a driver, driver's helper, loader/unloader, or mechanic, and whose work directly affects the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act. *See* 29 C.F.R. § 782.2(b)(2) (*citing Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947); *Levinson v. Spector Motor Service*, 330 U.S. 649 (1947); *Morris v. McComb*, 332 U.S. 442 (1947)). These Supreme Court decisions also make clear that the determination of whether or not an individual employee is within any such classification is to be made by judicial process. *Id.* The evidence presented by Shoemaker in his affidavit is both relevant and admissible with respect to this determination, and therefore must be considered by the Court on this issue.

UPS attempts to distract from this evidence by arguing that it is irrelevant because it allegedly relates only to job titles.[4] In doing so, UPS misconstrues the evidence. It is readily apparent from the specific facts presented by the Shoemaker Affidavit that he was not employed during the relevant time period as part of any group recognized as an exempt classification under the Motor Carrier Exemption (i.e., drivers, driver's helpers, loaders/unloaders, or mechanics), nor did the character of his activities as an on-road supervisor regularly involve the performance of exempt work within the meaning of the Motor Carrier Exemption. This evidence is both relevant and admissible on the issue of whether Shoemaker was properly classified as exempt from the overtime laws of the Fair Labor Standards Act (the "FLSA") during the entire time he worked as

---

[4]Memorandum in Support of Motion to Strike Portions of the Affidavit of Gerald Shoemaker Dated July 26, 2010 (Dkt. 27), at p. 1.

an on-road supervisor (approximately 124 workweeks from September 2007 to January 2010).[5] *See* 29 C.F.R. § 782.2(b)(3) ("[W]here the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no change in his duties.") (citations omitted).

In the alternative, the evidence also is relevant to the issue of whether the exemption might apply to Shoemaker only during particular workweeks when he worked as an on-road supervisor. In this regard, it recently has been recognized under similar circumstances that:

> "[I]n the case of an employee of a private carrier whose job does not require him to engage regularly in exempt safety-affecting activities . . . and whose engagement in such activities occurs *sporadically or occasionally* as the result of his work assignments at a particular time, the exemption will apply to him *only in those workweeks when he engages in such activities.*"

*Lopez v. United Parcel Service, Inc.*, 2010 U.S. Dist. LEXIS 26072, *27 (N.D. Cal. Mar. 1, 2010) (*quoting* 29 C.F.R. § 782.2(b)(4) (emphasis added). Although the parties dispute this factual issue, the evidence presented by Shoemaker is directly relevant and must be considered by this Court.

        **B.    Paragraphs 16, 22, 27(h), 27(k)-27(m), and 32 are Relevant to the Undisputed Fact that, Notwithstanding the Alleged Application of the Motor Carrier Exemption, Shoemaker's Duties During such Workweeks Fall within the Small Vehicle Exception.**

UPS objects to these paragraphs on the grounds of relevance, even though it is undisputed that Shoemaker performed certain duties on motor vehicles weighing less than 10,000 pounds and these paragraphs set forth direct evidence of such facts. Notwithstanding the Motor Carrier

---

[5] *See* Plaintiff's Memorandum in Opposition to Motion to Dismiss for Failure to State a Claim or, in the Alternative, Motion for Summary Judgment, at p. 8; and Shoemaker Affidavit, at ¶¶ 5 and 6(vi).

MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE PORTIONS OF THE
AFFIDAVIT OF GERALD SHOEMAKER DATED JULY 26, 2010, P. 5

Exemption, the overtime provisions of Section 7 of the FLSA shall apply to an employee of a motor carrier or motor private carrier in any workweek that he performs duties on motor vehicles weighing 10,000 pounds or less. *See* U.S. Department of Labor, Wage and Hour Division, *Fact Sheet #19: The Motor Carrier Exemption under the Fair Labor Standards Act (FLSA)* (November 2009), at p. 2. This is commonly referred to as the "small vehicle exception." *Id.* Further, the Motor Carrier Exemption does not apply to an employee in such workweeks even though the employee's duties may also affect the safety of operation of motor vehicles weighing greater than 10,000 pounds. *Id.* This is a relatively recent change in application of the law, and Shoemaker is entitled to present evidence demonstrating that the small vehicle exception applies to his circumstances.

Effective August 10, 2005, Congress through the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), amended the definition of "motor carrier" by inserting the phrase "commercial motor carrier" for "motor carrier." 49 U.S.C. § 13102(14) (2005). As a result, the definition of "motor carrier" in § 13102, after August 10, 2005, read as follows: "The term 'motor carrier' means a person providing commercial motor vehicle (as defined in section 31132) transportation for compensation." 49 U.S.C. § 13102(14). Section 31132 defines a "commercial motor vehicle" as:

> a self-propelled or towed vehicles used on the highways in interstate commerce to transport passengers or property, if the vehicle —
>
> (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;
>
> (B) is designated or used to transport more than 8 passengers (including the driver) for compensation;
>
> (C) is designated or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or
>
> (D) is used in transporting material found by the Secretary of Transportation to be

MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE PORTIONS OF THE
AFFIDAVIT OF GERALD SHOEMAKER DATED JULY 26, 2010, P. 6

hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

49 U.S.C. § 31132(1).

On June 6, 2008, the Technical Corrections Act of 2008, Pub.L. 110-244, 122 Stat. 1572 ("TCA"), became effective. Section 305 of the TCA replaced the previously changed language in SAFETEA-LU and restored the "motor carrier" language in lieu of "commercial motor vehicle." However, Section 306 of the TCA provides that "the Fair Labor Standards Act of 1938 (29 U.S.C. § 207) shall apply to a covered employee notwithstanding section 13(b)(1) of that Act (29 U.S.C. § 213(b)(1))." Section 306, therefore, makes "covered employees" eligible for overtime wages if they so qualify. To qualify as a "covered employee," the individual employee must be:

(1) . . . employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by Section 305;

(2) whose work, in whole or part, is defined as:

(A) that of a driver, driver's helper, loader, or mechanic; and

(B) affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles —

(I) designed or used to transport more than 8 passengers (including the driver) for compensation;

(ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or

(iii) used in transporting material . . . .; and

(3) who performs duties on motor vehicles weighing less than 10,000 pounds or less.

Pub.L 110-224, 122 Stat. 1572, Section 306(c). The net result of this change is that employees, who drive vehicles denoted in the Act as part of their employment that were once exempt from overtime

prior to the passage of SAFETEA-LU, are now eligible for the benefits of overtime compensation by virtue of the fact that they are "covered employees." *See Pettit v. Prof'l Transp., Inc.,* 2010 U.S. Dist. LEXIS 87940, *10-11 (S.D. Ind. Aug. 25, 2010).

    **C.    Paragraph 17 Does Not Violate the Best Evidence Rule, and When Viewed with Other Evidence in the Record Plainly Establishes that, Contrary to the Position of UPS Taken in this Litigation, Plaintiff Gerald Shoemaker Did Not Perform and Could Not Reasonably Be Expected to Perform Interstate Driving.**

UPS asserts that paragraph 17 should be stricken because it violates the best evidence rule.[6] This objection is improper and should be overruled. This portion of the Shoemaker Affidavit does not purport to "prove the content of a writing" such as the Collective Bargaining Agreement between UPS and the Teamsters. Rather, this paragraph contains testimony that is relevant, specific and based on the personal knowledge of Shoemaker. It is therefore admissible.

In addition to its objection, UPS also attempts to seize the opportunity to argue that the Collective Bargaining Agreement actually supports application of the Motor Carrier Exemption.[7] However, as a review of the evidence in the record already demonstrates, nothing could be further from the truth. With regard to Article 3 of the Master UPS Agreement,[8] Section 1 relating to "Operations Covered" and Section 2 relating to "Employees Covered" clearly provides that UPS employees who are package drivers are one of the groups of employees who are covered by the Master UPS Agreement. Further, pursuant to Article 3 of the, including Section 4 relating to "Work

---

[6]Memorandum in Support of Motion to Strike Portions of the Affidavit of Gerald Shoemaker Dated July 26, 2010 (Dkt. 27), at p. 6.

[7]Memorandum in Support of Motion to Strike Portions of the Affidavit of Gerald Shoemaker Dated July 26, 2010 (Dkt. 27), at p. 6-7.

[8]Shoemaker Affidavit, Exhibit C at Tab 1.

MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE PORTIONS OF THE
AFFIDAVIT OF GERALD SHOEMAKER DATED JULY 26, 2010, P. 8

Assignments" and Section 7 relating to "Supervisors Working," UPS supervisors are prohibited from performing any bargaining unit work, except due to the limited circumstances specified in such sections, including to train employees, demonstrate safety, or in the case of Acts of God. There is no broad exception that permits, as UPS apparently claims in this litigation, for Shoemaker as an on-road supervisor to be called upon at any time to drive to pick up and deliver packages.

### D. Paragraphs 18 and 28 Do Not Violate the Sham Affidavit Rule in the Ninth Circuit, and the Evidence Presented is Consistent, Material and Genuine.

UPS asks this Court to strike paragraphs 18 and 28 claiming that such provisions violate the Ninth Circuit's "sham affidavit rule" as set forth in *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his *prior deposition testimony*.") (emphasis added).[9] However, UPS has failed to identify any deposition statement or other sworn testimony contrary to the statements contained in these paragraphs. As will be shown, this is a fatal flaw in the argument made by UPS.

UPS contends that one allegation in the unverified complaint[10] as signed and filed by legal counsel in this case is sufficient to invoke the sham affidavit rule with respect to the sworn testimony of Shoemaker as set forth in his affidavit  Even assuming *arguendo* that the paragraphs of the Shoemaker Affidavit "contradict" the allegation in the complaint as UPS contends (which as explained further below they do not), the argument by UPS distorts the sham affidavit rule in the Ninth Circuit and is unsupported by legal authority. *See Olvera v. Sierra Nevada College,* 2010 U.S.

---

[9] Memorandum in Support of Motion to Strike Portions of the Affidavit of Gerald Shoemaker Dated July 26, 2010 (Dkt. 27), at p. 7.

[10] Complaint and Demand for Jury Trial ("Complaint"), at ¶ 42.

MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE PORTIONS OF THE AFFIDAVIT OF GERALD SHOEMAKER DATED JULY 26, 2010, P. 9

Dist. LEXIS 3386, *18 and n.7 (Nev. Jan. 14, 2010) (rejecting Defendants' efforts to invoke the sham affidavit rule with regard to allegations in Plaintiff's complaint); *see also Nelson v. City of Davis,* 571 F.3d 924, 928 (9th Cir. 2009) (rejecting attempt to apply the sham affidavit rule to sworn deposition testimony of a third party); *Leslie v. Grupo ICA,* 198 F.3d 1152, 1158 (9th Cir. 1999) (explaining that the sham affidavit rule does not apply to unsworn letters); *Martinez v. Bryant,* 2009 U.S. Dist. LEXIS 43976, *6 and n.1 (C.D. Cal. May 19, 2009) ("Defendants' reliance on [*Kennedy*] is misplaced. Defendants seek to impeach Plaintiff with a prior, unsworn, allegedly inconsistent statement .... By contrast, the issue in *Kennedy* was whether a party could defeat summary judgment by submitting an affidavit that contradicted prior deposition testimony."); and *Guy v. Calif. Dep't of Corrections,* 2007 U.S. Dist. LEXIS 89783, *3-5 (E.D. Cal. Dec. 6, 2007) (rejecting attempt to extend rule to apply to a declarant whose proffered statement allegedly conflicts with the prior testimony of another person).

Furthermore, the Ninth Circuit has recognized that the sham affidavit rule "should be applied with caution" in order to avoid "[a]ggressive invocation of the rule . . . to ensnare parties . . . and . . . encourage gamesmanship by opposing attorneys." *Van Asdale v. Int'l Game Tech.,* 577 F.3d 989, 998 (9th Cir. 2009) (*citing Sch. Dist. No. 1J v. AcandS, Inc.,* 5 F.3d 1255, 1264 (9th Cir. 1993) and *Nelson,* 571 F.3d 924 (9th Cir. 2009)). Accordingly, the Ninth Circuit has fashioned two important limitations on a district court's discretion to invoke the sham affidavit rule:

> "First, we have made clear that the rule 'does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony,' *Kennedy, 952 F.2d at 266-67*; rather, 'the district court must make a factual determination that the contradiction was actually a 'sham.' *Id. At 267*. Second, our cases have emphasized that the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."

*Van Asdale,* 577 F.3d at 998. In the present case, nether of these two conditions is present. First, UPS has failed to present any record of prior deposition testimony or other sworn testimony by

Shoemaker contrary to the statements contained in his affidavit. Accordingly, there is no adequate record upon which this Court can make the necessary factual determination as required by the Ninth Circuit. *See also Rose v. Munirs Co.,* 2008 U.S. Dist. LEXIS 96822, *5 (E.D. Cal. Nov. 19, 2008) ("[B]efore [the sham affidavit rule] applies the movant must provide a record sufficient for 'a [judicial] finding of fact' that a contradiction exists.") (*citing Kennedy,* 952 F.2d at 267)).

Second, there is no clear and unambiguous inconsistency between any allegation of the complaint and the specific facts set forth in the Shoemaker Affidavit that justifies striking any portion of the affidavit. Moreover, even if this Court were to take the unprecedented step of potentially applying the sham_affidavit rule as urged by UPS, then Shoemaker is entitled to introduce the challenged portions of his affidavit to explain the allegedly inconsistent statement of the complaint. *See Van Asdale,* 577 F.3d at 999 ("Thus, 'the nonmoving party is not precluded from elaborating upon, explaining or clarifying prior testimony . . . and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.'") (*quoting Messick v. Horizon Indus.,* 62 F.3d 1227, 1231 (9th Cir. 1995)).

In any event, contrary to the assertion by UPS, nothing in the Shoemaker Affidavit "flatly contradicts" the earlier allegation set forth in his complaint. *Kennedy,* 952 F.2d at 267. The subject allegation of the Complaint is general and ambiguous, stating only that: "Plaintiff will frequently perform the manual labor and driving duties associated with the job duties of delivery drivers." In his affidavit, however, Shoemaker explains further that he frequently performs manual labor associated with the job duties of delivery drivers, as follows:

> "I *often performed physical work as a UPS supervisor, which included manual labor ordinarily associated with UPS package drivers* such as lifting and lowering packages to and from the ground and the package car; pre-loading the package car at the beginning of a work shift; getting into and out of the package car in order to deliver packages; handling, inputting data and/or reviewing the DIAD units; using a hand truck; sorting

MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE PORTIONS OF THE
AFFIDAVIT OF GERALD SHOEMAKER DATED JULY 26, 2010, P. 11

packages; conducting pre-trip physical inspections of the package car; and off-loading packages that are returned to either the Boise or the Nampa Centers and marked as 'send again' items."

Shoemaker Affidavit, at ¶ 16. This testimony provides further explanation on the general allegation of the complaint concerning the frequent performance of manual labor by Shoemaker. Contrary to the argument apparently made by UPS, at no point has Shoemaker provided sworn testimony that he "frequently" performs "driving duties" of UPS drivers.[11] Indeed, Shoemaker has consistently maintained under oath that he does not typically drive UPS package cars to deliver or pick-up packages; that he routinely avoided driving UPS package cars during his employment as an on-road supervisor; that he sometimes drives his personal car for certain responsibilities of an on-road supervisor, but does not drive UPS vehicles over 10,000 pounds in weight for such purposes; and that such facts are entirely consistent with his personal experience and the local practices of UPS. Shoemaker Affidavit, at ¶¶ 16-18, 22-23, 28, and 30-35. This testimony is consistent with the evidence submitted in this case and it does not flatly contradict the allegation of the complaint.

E.  **Paragraphs 21, 25, 27 and All of Its Subparts are Based on the Personal Knowledge of Plaintiff Gerald Shoemaker, and Set Forth Specific Facts Demonstrating a Genuine Issue for Trial.**

UPS wrongly asserts that this paragraph and all of its subparts should be stricken for lack of personal knowledge. This objection conveniently overlooks the fact that Shoemaker testified that the matters set forth in his affidavit "are within [his] personal knowledge, and if called as a witness, [he] could and would competently testify on the matters stated." Shoemaker Affidavit, ¶ 2. In addition, the challenged portions of the affidavit set forth detailed testimony that is relevant, specific

---

[11] *See* Memorandum in Support of Motion to Strike Portions of the Affidavit of Gerald Shoemaker Dated July 26, 2010 (Dkt. 27), at p. 7.

MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE PORTIONS OF THE AFFIDAVIT OF GERALD SHOEMAKER DATED JULY 26, 2010, P. 12

and (as indicated above) are based on Shoemaker's personal knowledge. Accordingly, this objection by UPS should be overruled.

Similarly, UPS argues that paragraphs 21 and 25 contain inadmissible statements of opinion and conclusions of law. Contrary to the position of UPS, paragraph 21 does not contain a legal conclusion; rather, it sets forth a personal recollection of specific, material facts with respect to Shoemaker's actual duties relating to safety issues. Finally, paragraph 25 should not be disregarded as conclusory. *See Orsini v. O/S Seabrooke,* 247 F.3d 953, 960 n.4 (9th Cir. 2001).

### F. Exhibits Attached to the Shoemaker Affidavit are Properly Before the Court as Admissible Evidence it May Consider in this Proceeding.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Fed. R. Evid. 801(c).* Thus, a statement offered for a purpose other than to prove the truth of the matter asserted is not hearsay. *Orsini, 247 F.3d at 960 (9th Cir. 2001)* (holding that statements of others that plaintiff repeated in his affidavit were not hearsay because they were relevant to prove the effect the statements had on the plaintiff, not the truth of the matters asserted). Accordingly, Exhibit C consisting of the Master UPS Agreement, Western Region Supplemental UPS Agreement, the UPS Package Rider, and the UPS Sort Rider are admissible to prove the effect such documents had on Shoemaker, not the truth of the matters asserted. Exhibits A and B, consisting of Shoemaker's personal mileage log and expense reports with UPS, are admissible under Rule 801 as nonhearsay statements because the making of the log and expense reports is in itself relevant evidence or, alternatively, because they are subject to one or more hearsay exceptions, including recorded recollections within the meaning of Rule 803(5), records of regularly conducted activity under Rule 803(6), or further in the alternative, they have equivalent circumstantial guarantees of trustworthiness under Rule 807.

MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE PORTIONS OF THE
AFFIDAVIT OF GERALD SHOEMAKER DATED JULY 26, 2010, P. 13

### III.  CONCLUSION

Based upon the foregoing, Shoemaker respectfully requests that the Court deny the motion to strike portions of the Shoemaker Affidavit and relevant exhibits attached thereto.

DATED this 7th day of July, 2010.

                THOMAS, WILLIAMS & PARK, LLP

                */s/ Kim J. Dockstader*
                for THOMAS, WILLIAMS & PARK, LLP

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of September, 2010, I filed the foregoing electronically through the *CM/ECF* system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    B. Newal Squyres, nsquyres@hollandhart.com
    A. Dean Bennett, adbennett@hollandhart.com
    Elena R. Baca, elenabaca@paulhastings.com
    Benjamin B. Strawn, benjaminstrawn@paulhastings.com

    ATTORNEYS FOR DEFENDANT UNITED PARCEL SERVICE

                               */s/ Kim J. Dockstader*
                               for THOMAS, WILLIAMS & PARK, LLP