UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD SHOEMAKER, individually, and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>   v.<br><br>UNITED PARCEL SERVICE, INC., a corporation,<br><br>           Defendant. | Case No. 1:10-CV-185-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

**INTRODUCTION**

Before the Court is the Motion to Dismiss and Motion to Strike filed by Defendant United Parcel Service, Inc. ("UPS") on June 1, 2010 and August 12, 2010, respectively. (Dkt. 15, 27.) UPS alternatively filed its motion to dismiss as a motion for summary judgment, and requested the Court to take judicial notice of several other United States District Court decisions involving suits identical to or similar to the matter before the Court. The Court is asked to decide whether, as a matter of law, Shoemaker's

employment as an On Road Supervisor for UPS is exempt from the overtime compensation provisions of the Fair Labor Standards Act pursuant to the Motor Carrier Act exemption.

The Court conducted a hearing on the pending motions on January 25, 2011, at which all parties appeared represented by counsel. After considering the parties' arguments, briefing, and the relevant authorities, the Court will consider the motion to dismiss as one for summary judgment, and recommend that judgment be entered in favor of UPS. The Court also will grant the requests for judicial notice and deny the motion to strike.

## FACTS[1]

This litigation arises from an employment dispute concerning Plaintiff Gerald Shoemaker's ("Shoemaker") classification by UPS as an employee exempt from overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 207 *et. seq.* ("FLSA"). Shoemaker is currently employed by UPS as an On Road Supervisor. (Compl. ¶ 13.) He held this position since September of 2007 until he was placed upon a leave of absence on January 11, 2010. (Aff. of Shoemaker ¶ 4, Dkt. 24; Mizumoto Decl. ¶ 5 Ex. A, Dkt. 15-6.) Shoemaker is paid a salary and is considered by UPS to be an employee exempt from the FLSA's overtime compensation provisions. (Compl. ¶ 11, 22, 24, 25.) However, Shoemaker frequently works more than forty hours per week. (Compl. ¶ 13, 14, 16–21.)

---

[1] Unless otherwise noted, the facts set forth herein are undisputed.

**REPORT AND RECOMMENDATION - 2**

UPS is a global package delivery company serving over 200 countries and territories and delivering an average of 15.1 million pieces per day in global and interstate commerce. (Compl. ¶ 7, 51.) From their origination point, the packages are continually in transit until delivered at their final destination. (Guevara Decl. ¶ 5, Dkt. 15-4.) UPS package drivers have primary responsibility for picking up and delivering packages moving through interstate commerce and shipped through UPS's "small package" operations. (Guevara Decl. ¶¶ 6, 8, Dkt. 15-4; Hemmert Decl. ¶¶ 6, 10, Dkt. 15-5.) As an On Road Supervisor, Shoemaker's primary job duty is to train UPS delivery drivers according to standards set by the Department of Transportation ("DOT"). (Compl. ¶¶ 29, 34.) Shoemaker spends the majority of his work day on the road with drivers either training or observing the drivers. (Compl. ¶ 35.) According to the Complaint, Shoemaker's job as an On Road Supervisor required him to "frequently perform the manual labor and driving duties associated with the job duties of delivery drivers." (Compl. ¶ 42.)[2]

Shoemaker's managers reasonably expected Shoemaker, as an On Road Supervisor, to sometimes drive UPS package cars for the purpose of delivering or picking up packages that are moving through interstate commerce. (Guevara Decl. ¶ 8 Dkt. 15-4;

---

[2] Although UPS's delivery operations were not described further, the court in *Lopez v. United Parcel Service, Inc.*, No. C08-05396, 2010 WL 728205 at *1 (N.D. Cal. March 1, 2010) described UPS's operations in detail. Packages for shipping are submitted to a central UPS facility for processing. At the central hubs, employees unload, sort, and load packages onto large trucks for transport to regional package centers that service final delivery destinations. Once packages arrive at a regional package center, they are sorted and loaded onto delivery vans. UPS Drivers are organized into geographic teams that report directly to On Road Supervisors, who in turn are supervised by a Central Manager.

Hemmert Decl. ¶ 10, Dkt. 15-5.) UPS has been a motor carrier regulated by the DOT throughout the time Shoemaker has been employed. (Lavery Decl. ¶¶ 10–11 Dkt. 15-6.) Because On Road Supervisors are subject to being called upon to drive, UPS requires them to maintain DOT compliant licensing and medical certification. (Mizumoto Decl. ¶ 6 Dkt. 15-7.) Shoemaker's DOT licensing requirements were current throughout his employment. (Mizumoto Decl. ¶ 7, Ex. B Dkt. 15-7.)

UPS provided examples of when Shoemaker might be expected to assist with the delivery or pick-up of packages. For example, a regular driver's vehicle may break down or the driver may become ill; packages may arrive late to the package center and an On Road Supervisor would be expected to shuttle them to a regular driver; packages may need to be picked up at a specific time when regular drivers are unable to get them there; multiple drivers may be unexpectedly absent, requiring an On Road Supervisor to fill in for a driver; or package volume on a given day may exceed the capacity of the regular drivers to handle without assistance. (Guevara Decl. ¶ 9; Hemmert Decl. ¶ 1, Dkt. 15-4, 15-5.)

Drivers, or any other individual driving package cars, are expected to scan the packages being delivered with a hand held device called a DIAD. (Guevara Decl. ¶ 10, Dkt. 15-4.) Information from the DIAD is compiled into what is known as SPARCS data. (*Id.*; Zaleski Decl. ¶ 3, Dkt. 15-9.) When using the DIAD, the employee enters his or her identification number and the vehicle identification number into the DIAD when out delivering packages. (Zaleski Decl. ¶ 3, Dkt. 15-9.) According to the SPARCS data

associated with Shoemaker's employee identification number, Shoemaker delivered packages thirteen times between October 1, 2007 and December 21, 2009. (Zaleski Decl. ¶ 5 Ex. A, Dkt. 15-9.) UPS had the SPARCS data analyzed by Dr. Bruce Strombom, an expert in data analysis. According to Dr. Strombom's analysis, Shoemaker drove a vehicle weighing over 10,000 pounds and made at least one package delivery or pickup with that vehicle on 5% of the weeks during the period he worked as an On Road Supervisor. (Strombom Decl. ¶ 10, Dkt. 15-8.)

Shoemaker submitted an affidavit that, while disputing the accuracy of the data, did not deny that he might be expected to drive a UPS package car. Rather, Shoemaker explained that he did not "typically drive UPS package cars to deliver or pick-up packages" and that there were "very few occasions" that he needed to drive and deliver packages while working as an On Road Supervisor. (Aff. of Shoemaker ¶ 17–18, Dkt. 24.) Shoemaker confirmed that he ensured UPS package cars were properly loaded; he often loaded the package cars; he road along with drivers and assisted with the delivery of packages; he conducted pre-trip inspections of the package cars; and, he sometimes used his personal car to complete deliveries, shuttle packages to drivers or other locations, or meet UPS package drivers on their assigned routes. (Aff. of Shoemaker ¶¶ 15–16, Dkt. 24.)

Concerning the DIAD data and SPARCS spreadsheets, Shoemaker acknowledges that the data indicates thirteen dates upon which he appeared to drive a UPS package car and deliver packages. (Aff. of Shoemaker ¶ 26, Dkt. 24.) However, Shoemaker contends

the data is incomplete or based upon faulty assumptions. He clarifies that, at least for some of the dates, he was on training exercises and he and the driver trainee used Shoemaker's employee identification number, or he was driving his own personal car. (Aff. of Shoemaker ¶ 27, Dkt. 24.) According to Shoemaker, he drove a UPS package car weighing over 10,000 pounds and made at least one package delivery or pickup on only one of the thirteen weeks identified by UPS. (Aff. of Shoemaker ¶ 28, Dkt. 24.)

UPS seeks a determination that Shoemaker is exempt from the overtime compensation provisions of the FLSA under the Motor Carrier Act Exemption. UPS argues that because Shoemaker was expected to, and did, drive UPS package cars, the Motor Carrier Act exemption to the FLSA applies and the complaint, which alleges one count under FLSA, must be dismissed. Shoemaker argues that his driving activities were *de minimis*, and therefore the Motor Carrier Act does not apply.

## DISPOSITION

### 1. Requests for Judicial Notice

UPS requests judicial notice under Fed. R. Enid. 201(b) of three district court decisions: (1) *Gustafson v. United Parcel Service, Inc.*, San Bernardino Super. Ct. Case No. CIVRS807355, Notice of Ruling (Sept. 22, 2009); (2) *United Parcel Service Wage and Hour Cases*, Los Angeles Super. Ct., Judicial Council Coordination Proceeding No. 4606; and (3) *Marlo v. United Parcel Service, Inc.*, C.D. Cal. Case No. CV03-04336 DDP (March 19, 2009). (Dkt. 15-3, 26-1.) No opposition was filed. The request is granted as the memorandum decisions qualify as adjudicative facts capable of accurate and ready

determination by resort to the public case files of the United States Courts.

## 2. Motion to Strike

UPS moves to strike particular paragraphs of Shoemaker's affidavit submitted in opposition to the Motion for Summary Judgment on various grounds, each of which will be discussed in turn.

### A. *Paragraphs 18 and 28*

First, UPS seeks to strike paragraphs 18 and 28 because the statements made therein about the frequency Shoemaker drove UPS package cars contradicts what is stated in the Complaint. UPS argues that Shoemaker cannot create a triable issue of fact by contradicting his or her own prior sworn testimony. It is true that the Ninth Circuit Court of Appeals has held that a court may disregard a "sham" affidavit that a party files to create an issue of fact by contradicting the party's prior deposition testimony. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1157 (9th Cir. 1999). But there are various problems with UPS's contention that paragraphs 18 and 28 should be stricken because the statements contradict Shoemaker's prior statement that he will "frequently perform the manual labor and driving duties associated with the job duties of delivery drivers." (Compl. ¶ 42.) No sworn deposition testimony is at issue, and the complaint was unverified. The Complaint is therefore insufficient to counter UPS's summary judgment motion supported by affidavits. *See* Fed.R.Civ.P. 56(e);[3] *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir.

---

[3] The motion was filed prior to the amendments to the Federal Rules of Civil Procedure, which became effective on December 1, 2010. Therefore, the Court cites to the prior version of Rule 56. The standard for granting summary judgment remains unchanged in the amended rule.

1985). *See also Shockley v. City of Newport News*, 997 F.2d 18, 23 (4th Cir.1993) (explaining that a sworn affidavit is not a "sham" merely because it contradicts unsworn letters).

Additionally, Shoemaker's affidavit seeks to elucidate upon evidence submitted in support of UPS's motion, and to explain prior unsworn statements made in the Complaint. *See Messick v. Horizon Indus., Inc.*, 62 F.3d 1227, 1231 (9th Cir.1995) (stating that, even under the "sham affidavit" doctrine, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony" and that "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit"); *see also Seshadri*, 130 F.3d at 804 (recognizing "that a party might be able to explain away his prior inconsistent statements" and stating that a party should be bound by such statements only if they are unexplained). Therefore, the Court will deny the motion to strike as to paragraphs 18 and 28.

**B.** *Paragraphs 5, 7, 8, 9, 16, 17, 22, 27F, 27H, 27K-27M, and 30–35*

UPS contends the statements made in these paragraphs are inadmissible because they are irrelevant. Paragraphs 5, 7, 8, and 9 discuss Shoemaker's employment history, and explain he was never employed in any other capacity other than as an On Road Supervisor. Paragraphs 16, 17, 22, 27H, 27L explain that Shoemaker often drove his personal car rather than a UPS package car when he was required to make package deliveries. Paragraphs 27F, 27H, 27K, 27L, and 27M discuss certain driving activities Shoemaker performed that UPS contends are not relevant to the Strombom declaration, as those dates were not considered as part of Dr. Strombom's analysis. And finally, paragraphs 30, 31, 32, 33, 34 and 35 dispute the reasons given by Mr. Guevara and Mr. Hemmert concerning when an On Road Supervisor might be required to drive. Shoemaker contends the information is relevant, because it demonstrates that the MCA exemption does not apply to him.

Under Fed. R. Evid. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that is not relevant is inadmissible. Fed. R. Evid. 402. The Court finds the evidence concerning Shoemaker's employment history, when and how he drove package cars or his own personal car, as well as his other driving activities, relevant to its determination. However, even if the Court has erred in its consideration of the statements UPS finds objectionable, the error would be harmless in this instance, because the Court's

consideration of the evidence did not alter the outcome of the motion for summary judgment.

As for the other portions of the affidavit UPS contended are objectionable, the Court did not consider the statements made therein to be material in reaching its decision. Therefore, the Motion to Strike will be denied.

## 3. Standards Applicable to UPS's Motion to Dismiss

### A. *Motion to Dismiss Standards*

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, a complaint, or portions thereof, will be dismissed if the plaintiff cannot establish "any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing Twombly with approval). A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations . . . but requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 129 S.Ct. at 1949.

If either party submits materials outside the pleadings in support of or in opposition to the motion, and the Court relies upon those materials, a motion to dismiss under Rule 12(b)(6) must be converted to a motion for summary judgment. Fed. R. Civ. P. 12(d); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). But if the Court does not rely upon the extra materials in rendering its decision, a Rule 12(b)(6) motion need not be converted into a motion for summary judgment simply because matters outside the pleading are introduced. *Keams v. Tempe Technical Institute, Inc.*, 110 F.3d 44, 46 (9th Cir. 1997).

UPS submitted various affidavits as well as exhibits. Shoemaker had an opportunity to respond, and filed an affidavit with his response brief. The Court relied upon the evidence submitted. Therefore, the Court will convert UPS's motion to a motion for summary judgment under Rule 12(d) and Rule 56(c)(2). Accordingly, the Court is not limited to the facts as set forth in the Complaint. The Court may consider the Complaint in light of the additional evidence submitted for consideration.

**B. *Motion for Summary Judgment Standards***

Motions for summary judgment are governed by Fed. R. Civ. P. 56(c)(2), which provides, in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A moving party may show that no genuine issue

of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). It is not enough for the [nonmoving] party to "rest on mere allegations or denials of his pleadings." *Id*. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

In determining whether a genuine issue of material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir. 1981). The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that, to resist a motion for summary judgment, the non-moving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may

> reasonably be resolved in favor of either party; and (3) must
> come forward with more persuasive evidence than would
> otherwise be necessary when the factual context makes the
> nonmoving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882

F.2d 371,374 (9th Cir. 1989).

## 4. The FLSA's Motor Carrier Act Exemption

Congress enacted the FLSA in 1938 to protect workers from substandard wages.

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Section

207(a)(1) of the FLSA sets forth the right of employees to receive overtime pay "at a rate

not less than one and one-half times the regular rate" for any hours worked in excess of

40 in any work week. 29 U.S.C.S. § 207(a)(1). Simultaneously, however, Section 213 of

the FLSA specifically exempts certain employers and employees from Section 207

coverage. *Dole v. Circle "A" Construction, Inc.*, 738 F.Supp. 1313, 1316 (D. Idaho

1990). The exemption is known as the "Motor Carrier" exemption. Section 213(b)(1) sets

forth the Motor Carrier Act exemption and provides the following:

> (b) The provision of section 207 [the FLSA wage/hour
> provision of this title] *shall not apply* with respect to—
> (1) any employee with respect to whom the Secretary of
> Transportation has power to establish qualifications and
> maximum hours of service pursuant to the provisions of
> section 31502 of Title 49[.]

29 U.S.C.S. § 213(b)(1) (emphasis added). In turn, 49 U.S.C. § 31502(b) gives authority

to the Secretary of Transportation the ability to prescribe requirements for:

> (1) qualifications and maximum hours of service of

employees of, and safety of operation and equipment of, a motor carrier; and
(2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

Thus, § 213(b) "exempts from the overtime compensation provisions those employees who are subject to the jurisdiction of the Secretary of Transportation . . . under the Motor Carriers Act." *Jones v. Giles*, 741 F.2d 245, 249 (9th Cir. 1984).

The term "motor private carrier" as used in Section 31502 is defined as:

[A]person, other than a motor carrier, transporting property by motor vehicle when—
(A) the transportation is as provided in section 13501 of this title; [*i.e.*, in interstate commerce];
(B) the person is the owner, lessee, or bailee of the property being transported; and
(C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(15).

There is no concurrent jurisdiction between the FLSA and Section 31502 of the Motor Carrier Act. *Jones,* 741 F.2d at 249. In other words, if the Motor Carrier Act applies, then the FLSA does not. The Department of Transportation ("DOT") has the power to establish qualifications and maximum hours of service pursuant to the provisions of the Motor Carrier Act. *Dole*, 738 F.Supp. at 1318. *See also Morris v. McComb*, 332 U.S. 422, 434 (1947). For a motor carrier to fall within the DOT's jurisdiction, it must transport passengers or property in interstate commerce. 49 U.S.C. §

31502(a)(1); 49 U.S.C. § 13501.[4] However, simply because an employer might fall under the DOT's authority, not all of its employees will fall under the DOT's authority by virtue of their employment. *Morris*, 332 U.S. at 436 n.13 (recognizing an employee could be under the jurisdiction of the Department of Labor one week, and the Department of Transportation the next, depending upon whether he actually engaged in interstate commerce); *Dole*, 738 F.Supp. at 1319. Instead, the exemption as applied to an individual employee depends upon the activities of the individual; what is controlling is the character of the activities involved in the performance of his or her job. *Bishop v. Petro-Chemical Transport, LLC*, 582 F.Supp.2d 1290, 1299 (E.D. Cal. 2008) (citing 29 C.F.R. § 782.2(b)(2)). For an individual employee to fall within the purview of the DOT's authority, the employee must engage in activities that "affect the safety of operation" of the motor-carrier employer. *U.S. v. Am. Trucking Ass'ns*, 310 U.S. 534, 553 (1940).

Notwithstanding the exemption, to ensure an employee's maximum coverage under the FLSA, exemptions under the Motor Carrier Act are construed narrowly against the employer asserting their applicability, and the employer carries the burden of proving that an exemption applies. *Dole*, 738 F.Supp. at 1319 (citing *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). Employers who claim that an exemption applies to their employees must show that "the employees fit plainly and unmistakably within its

---

[4] Interstate commerce is, for purposes of the Motor Carrier Act, commerce that is "a practical continuity of movement from the manufacturers or suppliers without the state, through a warehouse and on to customers." Klitzke v. Steiner, 110 F.3d 1465, 1469 (9th Cir. 1997). The parties do not dispute that UPS and its package car drivers are engaged in interstate commerce.

terms." *Worthington v. Icicle Seafoods, Inc.*, 774 F.2d 349, (9th Cir. 1984), *cert. granted in part*, 474 U.S. 900 (1985), *and judgment vacated on other grounds*, 475 U.S. 709 (1986).

To meet the test, the Motor Carrier exemption defense can be established by (1) showing that a driver can reasonably be expected to drive across state lines, or (2) the driver hauled goods in "the practical continuity of movement" in interstate commerce. *Bishop*, 582 F.Supp.2d at 1298 (citing *Watkins v. Ameripride Serv.*, 375 F.3d 821, 825-26 (9th Cir. 2004)). "A driver is considered to be driving in interstate commerce if the driver is called upon to drive in interstate commerce as part of the driver's regular employment, or, even if the driver has not personally driven in interstate commerce, if, because of company policy and activity, the driver could reasonably be expected to drive in interstate commerce." *Bishop*, 582 F.Supp.2d at 1298. Therefore, if a carrier is engaged in interstate work and assigns drivers randomly to that driving, all of its drivers are considered subject to the Motor Carrier Act. *Bishop*, 582 F.Supp.2d at 1298 (citing *Dole,* 738 F.Supp. at 1322 (To prove the defense, employer must (1) engage in interstate commerce; and (2) its drivers could reasonably have been expected to make interstate runs.))

But a driver is not subject to the Motor Carrier Act "if there is no possibility of driving interstate or the possibility is remote." *Dole*, 738F.Supp. at 1322. Factors to consider in determining whether the motor carrier exemption applies to an entire class of employees when only a few are involved "in interstate commerce," are: (1) the proportion of interstate to intrastate employee activity; (2) the method by which a carrier assigns the

interstate activity to its employees; and (3) the overall nature of the carrier's business.

*Kosin v. Fredjo's Enterprises, Ltd.*, No. 88 C 5924, 1989 WL 13175 (N.D.Ill. Feb. 14,

1989). Nevertheless, transportation within a single state is still considered in "interstate

commerce" if it forms part of a "practical continuity of movement" across state lines from

a point of origin to its final destination. 29 C.F.R. § 782.7(b)(1). Intrastate deliveries are

considered part of interstate commerce "if the property in question was originally

delivered from out-of-state and the intrastate route is merely part of the final phase of

delivery." *Watkins v. Ameripride Servs.*, 375 F.3d 821, 826 (9th Cir. 2004).

## 5. Application of the MCA

It is undisputed that UPS is a motor carrier that engages primarily in interstate

commerce on a national and global scale. UPS transports packages between locations

designated by its customers, and includes locations in all fifty states. UPS unquestionably

provides the transportation of property in interstate commerce, and therefore UPS is

subject to DOT regulations.

UPS package car drivers, even though they may be driving intrastate, are involved

in interstate commerce because they are on the last leg of the package's journey from its

original destination to its final delivery place. UPS packages do not change character or

shape during their journey, and the same UPS package car driver might be responsible for

pickup and delivery of packages coming both from in state or out of state. (Guevara Decl.

¶ 4; Hemmert Decl. ¶ 5.) Therefore, UPS package car drivers indiscriminately perform

deliveries without regard to the origin of the packages, and drive in interstate commerce.

To satisfy its burden, UPS must show either that Shoemaker could be called upon to drive in interstate commerce, or that he actually drove in interstate commerce more than a de minimis amount. UPS has proven both. First, UPS established that all On Road Supervisors, including Shoemaker, were in a position to be called upon to drive in interstate commerce as part of his regular duties. *See* 46 F.R. 37902-02, 1981 WL 115508 (July 23, 1981). Although Shoemaker disputes that he in fact drove and indicated that he avoided driving whenever possible, his testimony does not dispute the underlying premise established by UPS that Shoemaker understood he was expected to, and could at any given time, drive a UPS package car traveling in interstate commerce. *See Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1155 (9th Cir. 1994) ("If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs"); *Starrett v. Bruce*, 391 F.2d 320, 323 (10th Cir. 1968) ("Even those drivers . . . who had never handled an interstate shipment were subject to be assigned" and therefore under the purview of the Motor Carrier Act). Shoemaker maintained DOT compliant licensing and medical certification at all times during his employment, evidencing UPS's intent that Shoemaker could be called upon to drive a UPS package car if necessary.[5] And, in fact, Shoemaker assumed

---

[5] The district court in *United Parcel Service Wage and Hour Cases* (*Oscar Ellis*), decided August 5, 2010, found that Ellis, an On Road Supervisor for UPS, was subject to regulation by the DOT and thus exempt from the overtime requirements of the FLSA under the Motor Carrier Act because he was subject to being called upon as part of his regular employment to drive in interstate commerce. (*See* Dkt. 26-1.)

responsibility for package delivery on various dates throughout his employment with UPS. (Aff. of Shoemaker ¶ 27, Dkt. 24.)

Alternatively, Shoemaker did, in fact, drive a UPS package car. Construing all of the evidence in Shoemaker's favor, Shoemaker admits that he drove a UPS package car weighing over 10,000 pounds and made at least one package delivery or pickup on one of the thirteen weeks identified by UPS. (Aff. of Shoemaker ¶ 28, Dkt. 24.) Shoemaker argues that his driving activities meet the *de minimis* exception to the Motor Carrier exemption, because he actually drove less than 1% of the time during the course of his employment. But courts applying the *de minimis* principle find that "it should seldom, if ever, be applied to drivers because of the direct effect of driving on the safety of motor vehicle operations." 46 F.R. at 37903. Rather, the appropriate test is "not whether a substantial part of [the employee's] duties affected the safety of operations but, rather, whether <u>any</u> of [the employee's] duties had a *substantial effect* on motor vehicle safety." *Crooker v. Sexton Motors, Inc.*, 469 F.2d 206, 209 (1st Cir. 1972) (quoting *Yellow Transit Freight Lines, Inc. v. Balven*, 320 F.2d 495, 498 (8th Cir. 1963)) (italics in original; underline added). The court considered the activity of an employee who drives in interstate commerce, "however frequently or infrequently," not to be trivial because the individual's activities directly affect the safety of motor vehicle operations. *Crooker*, 469 F.2d at 210.

Courts that have applied the *de minimis* exception generally view the employer's activities as a whole and the relationship of the individual's interstate trips to the

employer's interstate activities to determine whether an employee falls under the MCA exemption. For example, in *Kimball v. Goodyear Tire and Rubber Co.*, 504 F.Supp. 544, 547 (E.D. Tex. 1980), Goodyear's interstate driving activities accounted for less than one percent of its operations, occurred on average only once every three weeks, and its drivers were not randomly assigned to interstate hauls but rather assigned routes based upon seniority. In that case, the court found that Goodyear could not establish that it was exempt from the overtime pay requirements of the FLSA because its interstate driving activities were insufficient. *See also Coleman v. Jiffy June Farms, Inc.*, 324 F.Supp. 664, 670 (S.D. Ala. 1970), *aff'd*, 458 F.2d 1139 (5th Cir. 1972) (applying the *de minimis* exception when the employer's interstate involvement was "static and minimal" and constituted a mere .23% of all deliveries in the course of the employer's business); *Flowers v. Regency Transportation, Inc.*, 535 F.Supp.2d 765, 770–71 (S.D. Miss. 2008) (explaining that the connection by both the employer and its employees with interstate commerce must be more than *de minimis*).

In contrast, UPS's business is devoted entirely to interstate commerce. Shoemaker argues the *de minimis* exception applies to him based upon his driving activities alone, citing that of the thirteen instances noted by UPS, he personally drove a route using a UPS package car on only one occasion. (Aff. of Shoemaker ¶ 27(b), Dkt. 24.) However, on five other occasions, Shoemaker was either riding with a UPS driver for training purposes, or actually engaged in driving the package car for training purposes. (Aff. of Shoemaker ¶ 27(a), (c), (d), (e), and (I), Dkt. 24.) The character of Shoemaker's activities,

both as one who was expected to drive should the need arise, the actual occasional driver, and as a full time on-road supervisor engaged primarily in activities directly affecting the safety of operation of vehicles on public highways, renders him subject to the MCA exemption. *See Flowers*, 535 F.Supp.2d at 769 n.3 (citing cases where courts have found drivers to be covered by the MCA even if they engage in or are subject to only a small percentage of interstate driving when the employer's primary business was interstate shipping of goods). Shoemaker's interstate activities were more than *de minimis* when considered in conjunction with UPS's interstate shipping business.

Shoemaker's arguments to the contrary based upon his employment title is similarly flawed. Nothing within the regulations states that an employee must hold the title of "driver" for the MCA exemption to apply. In fact, DOT regulations state that "neither the name given to [an employee's] position nor that given to the work that [the employee] does is controlling." 29 C.F.R. 782.2(b)(2) (citing *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947)). Moreover, Shoemaker engaged in training for UPS package drivers, such as reinforcing driver methods, determining whether package drivers met minimum driver standards, riding along with package drivers to provide commentary or observations relating to space and visibility requirements, and conducting full-day rides to check performance issues. (Aff. of Shoemaker ¶¶ 19–20, Dkt. 24.) Shoemaker also drove for training purposes while drivers observed him. (*Id.* at ¶ 27.) As an individual who trained and supervised drivers, Shoemaker prepared UPS package drivers for their role in driving in interstate commerce, and promoted the safety of UPS's

interstate operations. *See Gonzales v. New England Tractor Trailer Training School*, 932 F.Supp. 697, 699 (D. Md. 1996) (finding instructors employed by a commercial truck driving school to be exempt from the overtime provisions of the FLSA under the MCA.)

Shoemaker's reliance upon *Lopez v. United Parcel Service, Inc.*, No. C 08-05396 SI, 2010 WL 728205 (N.D.Cal. March 1, 2010) is similarly unavailing. In *Lopez*, the court found that UPS was not entitled to summary judgment because there was a disputed issue of material fact concerning the extent that Mr. Lopez, who had worked as an On Road Supervisor, was required to drive UPS package cars. *Lopez*, 2010 WL 728205 at *8. In that case, UPS introduced the affidavit of Dr. Strombom, the same expert employed in this case, who identified that Mr. Lopez drove a UPS package car 7% of the total number of weeks during his employment as an On Road Supervisor. Mr. Lopez contended that the MCA exemption applied only during those weeks, and not during the entire time period of his employment as an On-Road Supervisor. The court applied 29 C.F.R. § 782.2(b)(3) and § 782.2(b)(4), finding that the dispute between whether Lopez drove as part of the ordinary course of his work, or whether driving was only a sporadic or occasional occurrence, precluded entry of judgment as a matter of law. *Id.*

In the Court's view, *Lopez*'s reasoning is incomplete. Section 782.2(b)(3) provides that the employee comes within the MCA exemption in all workweeks when he is employed when the bona fide duties of the job performed by the employee are such that he is called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities. In contrast, Section 782.2(b)(4) states that the

exemption will only apply to the employee in the workweeks for which he engages regularly in safety-affecting activities when the employee "is shifted from one job to another periodically or on occasion."

Contrary to Mr. Lopez who held five different positions, Shoemaker was employed as an On-Road Supervisor during all periods mentioned in the Complaint, from September of 2007 until he was placed upon a leave of absence on January 11, 2010. The *Lopez* court did not explain how, as an On-Road Supervisor, Mr. Lopez "shifted jobs" while he held that position such that Section 782.2(b)(4) would apply. Nor did the court establish, for purposes of its opinion, the length of time Mr. Lopez held the position of On-Road Supervisor between March 2001 and June 2008. This Court finds instead that Section 782.2(b)(4) does not apply in this case because Shoemaker was consistently employed as an On-Road Supervisor. He did not shift jobs, or hold any other supervisory positions.

The Court further finds *Lopez* limited because the overwhelming weight of authority as discussed in this opinion holds that an employer satisfies the MCA exemption by showing *either* that an employee can reasonably be expected to drive, regardless of whether he actually did drive, *or* the employee actually hauled goods in interstate commerce more than a *de minimis* amount considering the nature of the employer's business in relation to the employee's activities. The *Lopez* court failed to consider the alternative "reasonable expectations" test at all in its decision, nor did the court consider Mr. Lopez's activities in connection with UPS's interstate shipping

business. The Court therefore finds *Lopez* to be limited to the facts and arguments presented in that case, and finds its reasoning neither controlling nor persuasive in this case.

## CONCLUSION

Based upon the foregoing, the Court concludes that UPS has met its burden upon summary judgment. While there are factual disputes, there is no genuine dispute as to any material fact. The mere fact that UPS superiors expected Shoemaker to assume driving responsibilities at any given time, that Shoemaker maintained current DOT certification to do so, and that he did in fact drive a UPS package car in interstate commerce, is sufficient to exempt Shoemaker's employment from the reach of the FLSA's overtime pay requirements. The MCA applies in this instance, and the Court recommends summary judgment be granted to UPS.

As for the motion to strike, the Court concludes that it should be denied. Even if the Court is in error with respect to the motion to strike, all inferences were construed in favor of Shoemaker, and any error in considering the Shoemaker Affidavit was therefore harmless.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)    Defendant's Motion to Dismiss, or in the alternative Motion for Summary

Judgment (Dkt. 15) be **GRANTED**.

2)    Defendant's Motion to Strike (Dkt. 27) be **DENIED**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: February 10, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge